Good morning, Your Honors. Shannon McMenemy from Cedar Law on behalf of Appellant L. F. As was set forth in the Appellant's briefing and identified on the record, our client has been indefinitely prohibited from speaking, emailing, or otherwise communicating with the teachers and staff who serve his children. We are here today to ask you to cut this Gordian Knot and rule in L. F.'s favor, allowing him to regain his First Amendment rights, which are incorporated to him through the Fourteenth Amendment. Starting with the issue of standard of review, all parties agree that the Court is hearing this matter de novo. That's why we're asking you to rule in L. F.'s favor outright. However, we do believe it's important to note that the Court below errantly considered the facts in the light most favorable to the District rather than L. F. when considering cross motions for summary judgment. While it's true that a reviewing Court looks at a grant of summary judgment de novo, the principle from Anderson v. Liberty Lobby also remains true that the facts must be viewed in the light most favorable to our client and all justifiable inferences drawn in his favor when considering the District's cross motion. The standard does not change when there have been cross motions, and L. F. is entitled to the deference afforded to him under Liberty Law. That's been well articulated by this Court from Hoopa Valley Indian Tribe v. Ryan to Pintus v. Specific Creditors Association in 2010. If applying the correct standard of review on summary judgment is simply moot because the reviewing Court considers the matter de novo as the District asserted in its briefing, the Supreme Court would never have had to issue its 2014 decision in Tolan v. Cotton overturning a Federal appellate decision where the facts were viewed in the light most favorable to the moving party. What material fact did the District Court err in failing to view in your client's favor? The entire fact section of the District Court order is cited to all materials submitted by the District. There is not a single citation to a portion of the record that was submitted by L. F., and so every fact in the order was viewed in the light most favorable to the District. Well, the fact that the other side are presenting facts doesn't mean that they're not looking at the facts in the light most favorable to the plaintiff. You seem to be suggesting that the Court could only look at the facts as suggested by your client. That's not the case. We're asserting that the Court should have looked at the facts in the light most favorable to our client. I'm trying to get to the substance of what material facts those are, because I don't think the mere citation to one party's submission or the other's really matters. It's really the substance of the facts that would change the analysis on summary judgment. Absolutely. I'll give you the key issue, and that was how the communication plan was characterized. If you look at the evidentiary record and look at the plan itself, which is on 87 through 88, and then the imposition of sanctions against our client, which is at 90 through 91, and 522 through 523, and the District's explanation of the plan to its staff at 144 and 145, you'll see that the plan was not, as the District characterized and the District Court accepted, intended to regulate the communication of District staff. It was expressly intended to prohibit our client from communicating with teachers and staff. But where is that in the communication plan? It says, therefore, due to the unproductive communication pattern that's developed, the District will implement the following procedures regarding future interactions with you. And if you read it in context, the plan indicates that if you go outside of these channels, we're just not going to respond. Well, it actually identifies that they would sanction him further, which they did, and I would direct you to ER 146, which was the principle explaining the plan to staff, that states that LF is prohibited from having any further direct communication or contact with any District administrators or staff. Just to be clear, he has been specifically directed by the District not to contact any of his teachers, school staff, or administration. He cannot communicate regarding anything substantive about his students or District policy or procedure. So his ability to challenge District policy or procedure, to seek redress from the government, was expressly taken away from him. Well, as I read it, he can email them all he wants. They just won't respond. So is there a sanction imposed other than, all right, well, if you go outside of these set procedures, the District simply will not respond. Every time our client intended to do anything with respect to communicating about his children that the District found to be outside the communication plan, they took away other avenues of communication for him. So originally, he was afforded one biweekly meetings. He has a conversation with his child's principal at a meeting about her progress where they talk about test anxiety. And then, boom, he loses the ability to have a biweekly meeting. And, in fact, he is then prevented from communicating with the District at all for a month and a half. Then he is limited to communication, one meeting. Then it gets reduced down to one email per month. And so his ability to communicate with the District staff is effectively zero because he was only allowed one email a month. He's, to this day, three years later, only allowed one email a month. And every time he sought to have the plan modified or lifted, he's been told that he can't have that done because he's not had sufficient communication to justify the removal of the plan. So he's caught in a catch-22. Let me just make sure I understand your theory. So the prohibition on his speech and the sanction is that if he speaks outside of the channels, then the responses get reduced or eliminated? Correct. And his ability to speak gets reduced or eliminated. For example, he is now eliminated from having in-person meetings.  And the District was very clear that he could not engage in communication regarding anything substantive about his students or District policy or procedure, which limits his ability to challenge the very restriction plan that he's been placed under. As set forth in our briefing, the speech that LF engaged in is not the type of communication that can just be banned as a matter of course. This is not speech that's likely to incite lawless action. It's not obscene. It's not defamation. It's not fighting words. It's not true threats. It's also not speech that can be limited because of the special nature of the school. First, LF is not a student. He's also not a staff member. He's instead a parent who's trying to communicate with his local government entity, his school, about his children's education, and to petition them for redress when he disagrees with the decisions they make. Even if he were a student and we were talking about the Tinker Standard and its progeny, sending e-mails that are not obscene, Bethel, that aren't school-sponsored, Hazelwood, that don't promote drug use at a school-sponsored event, Fredrickson, or that are not likely to cause a material and substantial disruption, Tinker, are not things that can be restricted. With respect to material and substantial disruption, there is no straight-faced way the District can argue that. Receiving e-mails is not a material and substantial disruption. This Court has been clear that things like race riots, as in the Morgan Hill case, would be something that would rise to the level of a material and substantial disruption. Counsel, could I interject a question? Absolutely. Does the school district have the right to tell its employees when they're going to communicate? It would depend on the topic, given the First Amendment rights afforded to employees, and if it was implicating when the employees were at work, and if it was consistent with their collective bargaining agreement. Could the District impose limitation on employees that honored their First Amendment rights? Absolutely. But that's not what they did here. They went one step further and aimed this at Mr. Foley. Okay, so let me ask you this question. Is the school itself a public forum, or is it not a public forum? The school's e-mail system is a public forum because they have invited that as the way in which the public can communicate with them. And with that, I would direct you to the record where it flags the invitation to communicate with staff by e-mail, and that is at ER 226 and ER 246 and 537-45. Ultimately here, at best, our client had an unproductive communication pattern, according to the District. But he was never given the chance to have productive communication. He kept getting sanctioned every time he tried to talk about anything, including test anxiety. So this is, at best, speech they don't like. At best for which party? For the District. And as this Court recently decided in a different case that is analogous, CAMFA versus Board of Trustees, a redundant and unified school district, which was issued on September 18th after the briefing in this case was closed, there is a way in which school districts can constitutionally address concerns it has about parent behavior. For example, the school district in that case put a 24-hour advance notice prohibition on a parent who was engaging in profanity and impeding AIDS abilities to serve her child. The district absolutely can create reasonable limitations to access to its campus if a parent has violated one of its rules or policies. Here, the district has a civility policy. It has a harassment policy. It has a policy specific to parent responsibilities. It never invoked those with respect to LF. Therefore, he never had an opportunity to have the facts of the circumstances judged against a valid policy and have a reasonable opportunity to appeal. In Washington, when parents receive access limitation under State versus Green, they have an opportunity to appeal that. There must be an internal appeal process, and they have the opportunity to then challenge it in superior court. Here, under no existing policy, because the Lake Washington School District does not have a policy that identifies when it's going to issue these types of prohibitions, our client is stuck in a vicious circle where he can't communicate about his children. When he tries to, his ability is completely restricted. And here we are three years later, and all he can do is send one email a month. I'm going to reserve the balance of my time for rebuttal. Thank you, Counsel. Then we'll hear from Appellee. Thank you, Your Honors. May it please the Court, Taki Flavaris of Pacifica Law Group on behalf of Appellee Lake Washington School District. Your Honors, this case concerns a school district's management of its communications with an especially challenging parent. And in such circumstances, the school district must balance the parent's interest in giving input with the district's interest in ensuring the efficient use of its resources and maintaining staff morale to better serve all students within the district. Here, Lake Washington School District did that by channeling communications with Appellant L.F. through high-level administrators who could better handle his demanding and hostile communication pattern. The legal issue that is now before this Court is a narrow one, specifically whether the district's terms of engagement for communicating with L.F.  And as the district court held, the First Amendment does not preclude a school district from managing its interactions with a parent through its own staff members. Moreover, the district here reasonably channeled rather than silenced L.F.'s communications with the district and continued to engage with him on educational issues related to his children. Turning quickly to the standard of review, everyone here agrees it's de novo. Opposing counsel and L.F. have raised issues regarding the cross motions and whether the district court drew appropriate inferences. However, the same evidence was submitted in large part by both sides. There are no specific facts that are material here in dispute. The primary issue that the district court based its ruling on was legal, which is whether the First Amendment is implicated at all. And there are no inferences identified that the district court failed to credit. So turning to the merits, I'd like to address three key issues here. The first is whether the First Amendment is implicated by the circumstances of this case. The second is, assuming the First Amendment has been implicated, even if it has been implicated, whether the district's communication plan could qualify as a prior restraint, implicating the highest level of scrutiny under the First Amendment. And then third, even if the First Amendment is implicated, what is the appropriate forum analysis? So starting with the first issue, whether the First Amendment is implicated here. Your Honors, the First Amendment does not restrict a school district's ability to manage its communications with a parent. There is no dispute here that the communication plan only applies to LF's speech with district staff members. No more. And opposing counsel pointed to some emails that followed the implementation of the plan that was instructing teachers not to speak with LF, and that only furthers the point. The district was managing its staff members and telling them, we have set these certain terms of engagement. There are administrators who have been designated to engage in this speech on behalf of the district. You are not designated to do that. Please respect the district's decision on this front. So all we're dealing with is interactions. And the U.S. Supreme Court has repeatedly held that the First Amendment does not give anyone a right to an audience with the government. And so that was the holding in Minnesota State Board. It was the holding in Smith. And I would also point out that Minnesota State Board took place in an educational context, and the court specifically said the rule applies and no one is allowed to force the government to engage with them on their own terms. LF fails to respond to this precedent, and the cases that LF has cited involve very different circumstances, such as the leasing of a public theater or the denial of a permit to engage in a protest, activities at the core of the First Amendment. None of the cases LF cites involved a parent demanding to communicate with school staff. On the other hand, the district has cited numerous cases involving parent-school interaction, and those cases confirm there is no such First Amendment right, and school districts have the ability to manage these kinds of communications. So in sum, LF has no valid First Amendment claim, which is the only claim that he has asserted in this appeal. So turning quickly to the second issue, even if the court were to consider the application of the First Amendment, the communication plan cannot be considered a prior restraint. There has been no cases applying prior restraint analysis to a school district's administrative decision, which is what we have here. Moreover, the plan is simply a method of channeling communication. It is not silencing LF speech, and this court has held in the Maldonado case that mere channeling cannot implicate prior restraint analysis. So turning then to the third issue, again, even if the court were to consider applying the First Amendment to these circumstances, what is the appropriate forum analysis? Judge Gould, you raised the question of what kind of forum are we dealing with here? Is there a public forum or not? And the answer is no, there is no public forum. At most, we are dealing with a limited public forum, meaning all that is required is reasonableness and viewpoint neutrality. And the district, the record makes clear the district has been both reasonable and neutral in its actions. So beginning with whether there is a public forum, LF's only argument is about the district's email system. It is not about this, all of the district's facilities. So just focusing on the email system, there is restricted access to the email system. So staff members have to log in with passwords. The public is not entitled to simply use the email accounts as they see fit. Moreover, there is a district policy making very clear that the accounts are to be used only for school business, and the district will monitor to ensure that that is happening. So as in Perry, there is no intent to create a public forum. So then we are left with a limited public forum, as in Perry, which means the only thing that applies is reasonableness and viewpoint neutrality. And it is beyond dispute based on this record, the district's actions have been both reasonable and neutral. So beginning with reasonableness. The record shows that LF's communications with the district were burdensome, unproductive, and hostile, and thus warranted special terms of engagement based on the volume, based on the tone, and based on the overall burden on the district's resources, which is uncontroverted. And those concerns are a reasonable basis to then channel those communications to high-level administrators. Now the other reason the plan is reasonable is that it was targeted only to the ad hoc communications LF was engaging in with staff members. Other avenues of communication remained, including formal Section 504 accommodation process, asking for meetings, attending meetings, appealing decisions, receiving notice of what's happening, and parent-teacher conferences, just as examples. And the record shows LF actually continued to attend parent-teacher conferences. So there's other avenues of interaction that remained. It was these ad hoc, unproductive communications that were channeled. The record also shows, confirming the reasonableness of the district's approach, that its resources were conserved, and there is no evidence in the record of any instance in which LF was unable to get his point across to the district to raise any concerns and have them addressed. This, I would also point out, is not an indefinite restriction on his ability to communicate, both because of these other channels and the fact that it is a substantive, meaningful channel in which he can communicate, but also the district. There are examples in the record where the district offered to broaden the terms of communication, but because those were met with further objections to any terms at all and more argumentative responses, the district decided to keep it in place. But again, there's no evidence that there has been an issue with the ability to communicate. As to the basis, the reasonable basis of the plan, I'd also add that it is consistent with the district's civility policy, which indicates that direct communications will be attempted to resolve issues. If that doesn't work, administrators will then step in to assist. That's exactly what happened. That's what this plan is. And also, there was a state right to appeal the plan. Basically, the LF could have argued that it was arbitrary and capricious under state law, but did not pursue that route. So again, the plan is clearly reasonable. Turning then to viewpoint neutrality, the record makes clear that the district acted to address the legitimate concerns about the volume, tone, and burden here, not to silence LF's advocacy or out of a disagreement with the views that he was expressing. And that's clear from a number of things in the record. Direct testimony from the district about why it implemented the plan. The face of the plan is targeted. It's only as to these ad hoc communications. And other avenues remained, as I mentioned. There's an exception for emergency situations. LF continued to be able to access student data and records, and then again, 504 and parent conferences as examples. Next, the record shows that after the plan was implemented, the district proceeded to facilitate communications with LF. There's examples of information being provided to him upon request. There's an example in which he was allowed to actually meet with a teacher directly about a particular issue he had raised. There's another example in which LF provided data in a director meeting. That data was then relayed to a principal, and at LF's suggestion, a guidance team meeting was considered and then held. And at that meeting, formal accommodations were adopted for one of LF's children. So it's clear that the district did not disagree with the substance of what was being said. It was the manner in which it was presented. And when it was channeled, the district continued to consider it and, in this instance, agreed with it. On the other side of the coin, there's no evidence to the contrary. There's no evidence in the record showing that the district acted out of disagreement with particular views or to silence LF. LF's only argument on this point is the temporal proximity between a request for an appeal and then of a particular 504 decision. Counsel, could I ask you a question, please? Yes. So I'm having a little trouble understanding how the concept of viewpoint neutrality applies in this context. So was the plan applicable to anyone other than LF? No. If the plan is just related to LF, why is that viewpoint neutral? And I'm not sure whether anyone has to reach an issue of viewpoint neutrality with the other issues in the case. Correct. I think that's right, Your Honor. So this is all if the court got to viewpoint neutrality, then how would it be dealt with? The district's position is the court doesn't even get there. But if the court did get there, I think the argument would be that the limit on LF's ability to interact with the district, LF is suggesting it was done based on the views he was expressing. But there's no basis for that in the record. I agree with Your Honor, though, that it's odd to suggest there's a viewpoint neutrality issue when it's simply an administrative decision in dealing in a one-to-one situation with someone to manage the communications with them, as opposed to a rule that picks out a view and says, we're going to hear only on people who have this position rather than people who do not. And I'm not aware of precedent showing a similar situation where the court is saying this was a viewpoint discrimination in a one-to-one context. Okay. Thank you. Yes. So to finish the point on viewpoint neutrality, there's no evidence of discrimination. The suggestion of this inference because of the temporal proximity ignores the entire – Can I follow up? Yes. Does the fact that – I know that the communication plan focuses on the unproductive pattern of communications in the past, but there is one particular provision talking about the agenda where the district reserves the right to review the agenda and determine if the issues on the list are appropriate for discussion at meetings. Does that undercut your argument as to viewpoint neutrality? No, Your Honor. I think it's a valid concern if the district had used that in a way to simply silence any criticism and only hear positive feedback. But nothing like that occurred. The record shows, and what is reflected in the plan, the district was, again, trying to manage the volume and the tone issues. And as to the volume in particular, the district did not want to engage in discussions of issues that had already been resolved for which there was no new information or new points to be made. That was the main concern. And there's multiple examples in the record where issues are presented. LF is presenting agendas. And the administrator, the district administrator, takes time to go through each one and evaluate whether it had already been discussed and was resolved or whether, okay, this is something new and it makes sense for us to discuss it in this context. So none of it was about viewpoint. It's all about whether it was appropriate for the interactions and had already been covered. So to finish up on the neutrality question, even in between the time that LF appealed the decision at issue and the time the communication plan was implemented, there are multiple examples of the voluminous and hostile communications continuing. In fact, at the time he was lodging the appeal through those communications, he called a principal incompetent. I mean, so this pattern continued. And it's clear that's why the district did what it did. And also the district then followed up with LF on the appeal. It was he who abandoned it. And the communication plan allowed him to continue in the 504 process. So with all that said, there is no hint anywhere of viewpoint neutrality, of viewpoint discrimination, as this court held in Nelson in the absence of such evidence, especially when you have a record of showing the justifications, the neutral justifications. Summary judgment is appropriate. And so in conclusion, the district acted reasonably and lawfully in addressing the problematic communication pattern that arose between LF and district staff. As a matter of law, the First Amendment does not restrict the district's ability to manage these types of communications. That said, the district also acted reasonably and not to silence LF's advocacy. And unless there are other questions, the district respectfully requests that this court affirm. So I have no questions, Judge Winters. I don't. Thank you, Your Honors. No questions. All right. We'll hear from the Appellant's counsel on the rebuttal argument. It's unfortunate that the Lake Washington School District's counsel continues to do what we see as unproductive communication patterns, and that's to use hyperbole to vilify LF's communications. And I would point, Your Honors, to page 5 of our reply brief that describes how many different adjectives they use to essentially get to the same point of annoying. And so I would ask that you look at the communication at issue and not accept things like threatening or dangerous or the vilifying terms. In fact, I would hope that the idea of terms of engagement, a term of war, is not how school districts view interacting with parents when they have questions about their children's education. To be very clear, our client is not seeking to engage the district on his own terms. He's seeking to engage the district on the terms it allows every other parent to do, except for those the district chooses not to hear from. The district has no policy on when it issues these communication plans, but it certainly seems to apply them only to parents that they don't want to hear from. And so to that end, yes, it is effectively silencing LF and other parents whose viewpoints the district does not want to hear. With respect to the question about what the form analysis is, I would point, Your Honors, to the Perry Education Association versus Perry Board of Education case. That case related to staff use of mailboxes and what happens when the mailboxes in the staff office became available for third parties to communicate. That's what's happened here with the school district's website and e-mails. In fact, as I identified previously, the district encourages parents to use e-mail as a form of communication with staff. Allowing a parent to e-mail one high-level district administrator once a month is not reasonable. Also, it's important to remember that he is limited in what he can communicate about. He cannot have substantive discussions about his children and he cannot challenge district policies or procedures. That's the most blatant effort to limit content and viewpoint that I could come up with. You cannot petition the school district to challenge their existing policies or procedures. Additionally, it's important with respect to this idea of the plan is not unlimited and he could challenge it. When counsel for LF approached the school district about changing the plan, after there was discussion of whether LF had had sufficient opportunities to demonstrate a better communication pattern, which, of course, he was caught in the catch-22 of if he communicated, he faced further sanction, the district took the position that the very act of counsel sending a letter to the Lake Washington School District's general counsel reflected an intent to ignore and challenge the modified plan. So, LF cannot even have his attorney send a letter asking the district to consider a different plan without the district jumping to the conclusion that it's an intent to ignore and challenge its plan. With respect to the reference of RCW 28A-645, as identified in our reply brief, that simply is not applicable to this type of case because a school district does not have the authority in the first instance to decide if its actions are constitutional. That's addressed on pages 10 through 13 of our reply brief. Ultimately, this case truly is a case about a prior restraint against a parent's ability to speak, and there is no way to know whether the district's decision to impose speech restrictions on our client or any other client is not actually based on the content of their speech because they have no guideposts for determining when it is that they're going to issue one of these plans. They absolutely have other venues that are reasonable if they have concerns for their staff. They have three different policies they could apply. They chose not to apply those to LF. The court should cut this Gordian Knot, allow LF to have his First Amendment rights restored, and then if the district disagrees with his conduct, to have them apply one of their existing policies lawfully and allow him to challenge that. Thank you, Your Honors. Thank you, Counsel. I'm going to thank both counsel for their spirited argument and the high quality of the advocacy. So, thank you both. The LF case shall now be submitted.
judges: Gould, Nguyen, Presnell